IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02332-KLM

JACOB EARL HARRY,

     Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

     Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court[1] on the **Social Security Administrative Record**
[#11],[2] filed November 13, 2018, in support of Plaintiff's Complaint [#1] seeking review of
the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security
Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability
insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401
et seq., and for supplemental security income benefits pursuant to Title XVI of the Act, 42
U.S.C. § 1381 et seq. On December 24, 2018, Plaintiff filed an Opening Brief [#16] (the
"Brief"). Defendant filed a Response [#17] in opposition, and Plaintiff filed a Reply [#18].
The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§
405(g) and 1383(c). The Court has reviewed the entire case file and the applicable law and

_____

     [1] The parties consented to proceed before the undersigned for all proceedings pursuant
to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#15, #19].

     [2] "[#11]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF). This convention is used throughout this Order.

is sufficiently advised in the premises.  For the reasons set forth below, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I. Background

Plaintiff alleges that he became disabled at the age of thirty-three on December 10, 2015.  Tr. 12, 22.[3]  On December 16, 2015, Plaintiff filed applications for disability insurance benefits under Title II and for supplemental security income under Title XVI.  Tr. 12.  On February 21, 2018, an Administrative Law Judge (the "ALJ") issued an unfavorable decision.  Tr. 23.

The ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2021, and that Plaintiff had not engaged in substantial gainful activity ("SGA") since December 10, 2015, the alleged onset date.  Tr. 14.  The ALJ found that Plaintiff suffers from six severe impairments: (1) degenerative disc disease with stenosis, (2) congenital pes cavus, (3) status-post spinal cord stimulator, (4) obesity, (5) depression, and (6) anxiety.  Tr. 14.  However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  Tr. 15.  The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations: (1) he can occasionally bend, stoop, squat, crouch, and crawl; (2) he can frequently push and pull with the upper extremities; and (3) he is limited to occasional work interactions with the public.  Tr. 16.  Based on the RFC and the testimony of an

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 11 through 11-20 by the sequential transcript numbers instead of the separate docket numbers.

impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform no past relevant work, but that he was able to perform the representative occupations of mail clerk, office helper, marker, document preparer, eyeglass frame polisher, and surveillance system monitor.  Tr. 21-22.  She therefore found Plaintiff not disabled at step five of the sequential evaluation.  Tr. 23.  The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 404.981, 416.1481.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability."  A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making

a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step

or steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work."  *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy."  *Id.*

## B.    Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need not specifically "reference everything in the administrative record."  *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff makes two primary arguments in his assertion that the ALJ committed reversible error. First, Plaintiff argues that the "RFC is not supported by substantial evidence because the ALJ failed to properly weigh the opinion evidence of record." *Brief* [#16] at 14-19. Second, Plaintiff argues that the "ALJ erred by failing to include mental limitations in the RFC to account for her PRT analysis, and also failed to include limitations corresponding to the opinions given great weight." *Id.* at 19-21.

### A. Step Four: Opinion Evidence Provided by Dr. Hargett and PA Prochnio

First, Plaintiff argues that the "RFC is not supported by substantial evidence because the ALJ failed to properly weigh the opinion evidence of record." *Brief* [#16] at 14-19. This argument consist of a number of sub-arguments, but all appear to be aimed toward the ALJ's step four RFC analysis. *See id.*

Plaintiff argues that the ALJ failed to properly weigh the opinions of psychologist Harl Hargett, Ph.D. ("Dr. Hargett"), and Kirk Prochnio, PA-C ("PA Prochnio"). *Id.* With respect to their medical opinions, the ALJ stated:

> The undersigned also considered the more limiting opinion of the claimant's psychologist Harl Hargett, Ph.D. This opinion indicates that the claimant can only stand and sit for up to a 1/3 of each eight-hour workday and can only lift up to twenty pounds occasionally and up to five pounds frequently, along with the ability to only infrequently to occasionally perform manipulative activities or postural activities. He also indicated that the claimant would be off task up to 70 percent of the time and need excessive breaks. He would also need to alternate positions every thirty minutes. Dr. Hargett also indicated that the claimant had marked limitation in his ability to function in the mental demands of work and would be off task 60 percent of a typical day due to mental symptoms. He described many marked limitations in areas of understanding and memory, sustaining concentration and persistence, interacting socially, and adapting.
>
> There is also a more limiting opinion from Kirk Prochnio, PA-C. According to Mr. Prochnio, the claimant can sit occasionally in eight-hours and occasionally lift up to five pounds and infrequently twenty or more. The claimant is limited to no more than occasional manipulative and infrequent postural abilities with the need to lie down during the day and shift positions and be off task more than fifty percent of a typical day.
>
> The extreme limitations noted by these treatment providers are not supported by the relatively mild findings upon imaging. They are not consistent with the examinations [sic] findings, including the longitudinal evidence showing relatively intact strength, sensory perception, motor function, and gait. They are not necessarily consistent with the claimant's admissions of improvement []or with his relatively active daily activities, including his ability to be a caretaker to his two young kids or his ability to work part-time. Moreover, Dr. Hargett's statement in regards to the claimant's physical functioning is out of his area of expertise as he is not a physician. Additionally, Mr. Prochnio is not a qualified medical source. He did not adequately explain physical findings that could account for the degree of functional loss described. With this in mind, these opinions are not persuasive and are given lessor [sic] weight in formulating the RFC in this case.

Tr. 20-21 (internal citations omitted).

### 1.    Consistency with Medical Evidence

The ALJ stated with respect to Dr. Hargett's and PA Prochnio's opinions that "[t]he

extreme limitations noted by these treatment providers are not supported by the relatively mild findings upon imaging. They are not consistent with the examinations [sic] findings, including the longitudinal evidence showing relatively intact strength, sensory perception, motor function, and gait." Tr. 21. Plaintiff only explicitly takes issue with the ALJ's comments to the extent they apply to Plaintiff's spinal impairments. *Brief* [#16] at 16.

In support of his argument, Plaintiff primarily cites to two pages of two medical records created by PA Prochnio. *Brief* [#16] at 16 (citing Tr. 372, 378); *see also id.* at 9-10. On February 20, 2016, PA Prochnio recorded that at L4-L5 on Plaintiff's lumbar spine:

> Broad-based posterior bulge minimally effaces the ventral thecal sac, there is moderate facet/ligamentum flavum hypertrophy resulting in minimal central canal narrowing, the thecal sac measures 16 mm transverse by 8 mm AP through this level (7/19), there is preserved CSF signal surrounding the nerve roots. There is no significant foraminal narrowing.

Tr. 378. Less than two weeks later, on March 3, 2016, PA Prochnio recorded that at C2-C3, C3-C4, and C4-C5 on Plaintiff's cervical spine, "there is mild disc degeneration and uncovertebral joint hypertrophy," but that "[t]here is no central canal or neural foraminal narrowing." Tr. 372. He further recorded that at C5-C6, "there is moderate disc degeneration with associated, broad-based paracentral disc protrusion. This mildly impresses on the anterior aspect of the thecal sac, resulting in mild central canal narrowing. AP diameter of the canal measures 9.1 mm, which is stable. There is no neural foraminal narrowing." Tr. 372. With respect to C6-C7, he wrote: "[T]here is moderate disc degeneration with associated, small paracentral disc protrusion. This mildly impresses on the anterior aspect of thecal sac and results in mild central canal narrowing. AP diameter [of] the canal measures 9.8 mm, which is stable. There is no neural forminal narrowing." Tr. 372.

In addition to these two citations, Plaintiff asserts that "[e]xaminations throughout the record also revealed numerous findings of sensory loss, reduced ranges of motion, tenderness, and positive straight leg raise testing." *Brief* [#16] at 16. Plaintiff then provides a string cite to a number of additional medical records but does not connect the impact of these records to the ALJ's decision. Nevertheless, the Court examines each citation in turn.

Tr. 393 is a page from PA Prochnio's December 22, 2015 examination. He there noted with respect to Plaintiff's lumbar spine: "Range of motion is restricted with extension. Right and left rotation associated with increased pain. Tenderness noted over the lumbar paraspinal above intercrestal line and lumbar paraspinal at and below intercrestal line."

Tr. 376 is a page from PA Prochnio's March 1, 2016 examination. He noted with respect to Plaintiff's cervical spine: "Spurling's maneuver causes radiation of pain, pain in the muscles of the neck radiating to upper extremity." He further noted in connection with the lumbar spine: "Range of motion is restricted with extension. Right and left rotation associated with increased pain. Tenderness noted over the lumbar paraspinal above intercrestal line and lumbar paraspinal at and below intercrestal line. On examination of paravertebral muscles, spasms and tenderness noted on the right side. Lumbar facet loading is positive on the right side. Straight leg raising test is positive on the right side in supine position." He also noted in connection with a general musculoskeletal examination: "Generalized myofascial tenderness noted in [upper extremity], [lower extremity] and along spine."

Tr. 436 is a page from the May 4, 2016 independent medical examination report by Ronald J. Jendry, M.D. While this page of the report discusses range of motion of the

musculoskeletal system, all of the findings state "no discernible discomfort" and/or that the tested ranges of motion were within "normal ranges." Thus, it is not obvious how Plaintiff's citation to this record supports his argument.

Tr. 731 is a page from the report of Plaintiff's January 16, 2017 visit to Rocky Mountain Pain Solutions. This page discusses Plaintiff's medications and previous treatment and states in connection with the musculoskeletal system: "Positive pain reproducible with facet loading in cervical and lumbar region(s). Positive tenderness with sacroiliac joint loading maneuvers BILATERALLY."

Tr. 447-449 concerns Plaintiff's March 7, 2017 operation for right carpal tunnel syndrome, but Plaintiff does not connect this record to the ALJ's decision, given that Plaintiff's discussion in this paragraph of the Brief [#16] concerns only Plaintiff's spine.

Tr. 1002 concerns Plaintiff's August 23, 2017 visit to Colorado Brain & Spine Institute, and this page of the record reports a "mild decrease in degrees" in connection with Plaintiff's range of motion during the cervical exam. There is no indication here how this "mild decrease" in Plaintiff's spinal range of motion supports the extreme limitations noted by Dr. Hargett and PA Prochnio.

Having closely examined the records to which Plaintiff directs the Court's attention, the Court cannot find that they clearly support the type of severe, disabling physical impairments suggested by Dr. Hargett and PA Prochnio. These records are not supportive of extreme limitations, but merely show that Plaintiff experiences musculoskeletal pain, which is consistent with the ALJ's finding, in which she conceded that the medical record demonstrates the existence of impairments causing some limitations. Tr. 21; *see also* Tr. 18 ("As a whole, [the] evidence supports some degree of pain and loss of function related

to the claimant's spinal impairment and obesity . . . ."). Plaintiff has not shown that the ALJ's reasoning here "is overwhelmed by other evidence in the record," *Grogan*, 399 F.3d at 1261-62, and the Court reemphasizes that it "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper*, 528 F. App'x at 890. Because Plaintiff has not shown that these medical records support the severe restrictions opined by Dr. Hargett and PA Prochnio, the Court finds that the ALJ did not commit reversible error on this issue.

### 2. Consistency with Daily Activities

The ALJ stated that Dr. Hargett's and PA Prochnio's opinions "were not necessarily consistent with the claimant's . . . relatively active daily activities, including his ability to be a caretaker to his two young kids or his ability to work part-time." Tr. 21. Plaintiff only explicitly takes issue with the ALJ's comments regarding child care. *Brief* [#16] at 16. Plaintiff argues that "[t]he ability to care for one's children does not indicate an ability to sustain work at any level on a full time basis." *Id.*

To a certain degree, Plaintiff is correct here, but the pertinent question is not whether a claimant can care for his children. Rather, the pertinent question is what evidence is in the record demonstrating how physically demanding that child care is, and thus how it reflects on a claimant's ability to work on a full time basis. *Richardson v. Astrue*, 858 F. Supp. 2d 1162, 1179 (D. Colo. Mar. 12, 2012). For example, children who are infants or toddlers typically require more physically demanding care than those who are in grade school. *Id.* Regardless, there must be something in the record demonstrating how demanding the particular child care at issue is. In *Martinez v. Astrue*, 422 F. App'x 719, 728 (10th Cir. 2011), the Tenth Circuit Court of Appeals reversed an ALJ's credibility finding

in part because there was "nothing in the record to support the ALJ's finding that Mr. Martinez cares for his daughter without help from others, or that providing such care is 'quite demanding both physically and emotionally.'"

Here, similarly, although the ALJ repeatedly referred to Plaintiff's "ability to be a caretaker to his two young kids," *see, e.g.*, Tr. 21, the only supporting evidence she cites is that the two children who live with Plaintiff are 2-years-old and 5-months old, and that Plaintiff can lift them both, although he tries to avoid doing so. Tr. 19. Without more, though, this says very little, if anything, about Plaintiff's ability to engage in SGA on a full-time basis. This is especially true because his wife lives in the home and also takes care of the children. Tr. 48. There is simply no evidence in the record (besides the scintilla of evidence that Plaintiff can lift a baby and a toddler, when he must) that Plaintiff's care for his children, as actually performed and not simply as a matter of speculation, is so demanding as to show that Plaintiff "is much less limited than alleged by his pain, his obesity, or his loss of range of motion from his spinal impairments." Tr. 20.

Accordingly, the Court finds that the ALJ erred in her RFC assessment to the extent it is supported by Plaintiff's child care activity.

### 3.    Dr. Hargett's Opinion

Specific to Dr. Hargett's opinion, the ALJ stated: "Dr. Hargett's statement in regards to the claimant's physical functioning is out of his area of expertise as he is not a physician." Tr. 21. Plaintiff does not contest this statement but points out that "this only accounts for Dr. Hargett's physical opinion, and does nothing to contradict his mental recommendations, which were also disabling." *Brief* [#16] at 17. "As a mental health provider, Dr. Hargett was in a perfect position to evaluate mental impairments," Plaintiff

concludes. *Id.*

The Court agrees with Plaintiff's argument on this point. The ALJ did not discuss why she found Dr. Hargett's opinion concerning Plaintiff's mental impairments to be "not persuasive" and why his opinion should be "given lessor [sic] weight in formulating the RFC." Tr. 21. The previous portions of the paragraph in which the ALJ made these statements are most readily interpreted as applying solely to Plaintiff's physical functioning; at a minimum, it is not clear that they apply at all to Plaintiff's mental limitations, and it is incumbent upon the ALJ to make clear her reasoning. *See, e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) ("We cannot simply presume the ALJ applied the correct legal standards in considering Dr. Rowland's opinion. We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion.").

The Court is unconvinced by Defendant's argument attempting to provide retroactive support for the ALJ's determination here. Defendant first cites to the ALJ's discussion a few pages earlier concerning the psychological evaluation conducted by Mac Bradley, Ph.D. ("Dr. Bradley"), in May 2016. *Response* [#17] at 15 (citing Tr. 19). However, there is no discussion of, or even allusion to, Dr. Hargett's opinion here, or of any of the evidence on which Dr. Hargett relied. Tr. 19. Further, the ALJ did not herself cite back or allude to this portion of her report in making her evaluation of Dr. Hargett's opinion. Tr. 20-21. In addition, Defendant cites to various medical records which could possibly support discounting Dr. Hargett's opinion regarding Plaintiff's mental impairments. *Response* [#17] at 15. Again, however, there is no indication that the ALJ relied on those particular records in her determination that Dr. Hargett's opinion was inconsistent with the medical record on

the whole.  Tr. 21.

In short, the Court cannot follow the ALJ's reasoning as to why she discounted Dr. Hargett's opinion to the extent Dr. Hargett opined on Plaintiff's mental functioning. Accordingly, the Court finds that the ALJ erred to the extent she failed to explain whether and why she discounted Dr. Hargett's opinion on Plaintiff's mental functioning.

### 4. PA Prochnio's Opinion

Specific to PA Prochnio's opinion, the ALJ stated: "Mr. Prochnio is not a qualified medical source.  He did not adequately explain physical findings that could account for the degree of functional loss described."  Tr. 21.  Plaintiff agrees that PA Prochnio is "not an acceptable medical source under the regulations" but argues that his opinion "should have been given more weight due to his longitudinal treatment relationship with Plaintiff, the support for his opinion in the treatment notes, and the corroboration with the other evidence of record."  *Brief* [#16] at 18.

Plaintiff asserts that the ALJ rejected PA Prochnio's opinion "due to his credentials."  *Reply* [#18] at 2.  Perhaps if this had been the *sole* basis for the ALJ's rejection of PA Prochnio's opinion, Plaintiff may be correct that the ALJ would have erred.  However, this statement of the ALJ's opinion omits that the ALJ also gave PA Prochnio's opinion less weight in formulating the RFC because he did not explain in the medical records how his physical findings "could account for the degree of functional loss described."  Tr. 21.  The Court has already described at length the medical evidence to which Plaintiff cites that was provided by PA Prochnio.  *See supra* § III.A.1.  Despite PA Prochnio's long-term treatment relationship with Plaintiff, the ALJ did not err in finding that PA Prochnio's opinion was not fully supported by his treatment notes and other evidence of record.  Accordingly, the Court

finds that the ALJ did not commit reversible error in giving PA Prochnio's opinion less weight.

### 5. Medical Necessity of Assistive Device

In this section of the Brief discussing Dr. Hargett and PA Prochnio, Plaintiff also argues that "the ALJ erred by failing to evaluate the medical necessity of a cane, walker, or scooter in her decision," although neither the ALJ nor Plaintiff directly connects this argument to the opinions of Dr. Hargett and PA Prochnio. *Brief* [#16] at 18.

The legal issue regarding use of a cane, scooter, or other ambulatory assistive device "does not turn on whether a cane was 'prescribed' for [Plaintiff], but whether a cane was 'medically required.'" *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (citing Social Security Ruling 96–9p, 1996 WL 374185, at *7 (July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.")).

In *Spaulding v. Astrue*, the plaintiff had not "point[ed] to specific record evidence that would satisfy the medical necessity standard." *Spaulding*, 379 F. App'x at 780. However:

> [A] cane was provided to him by the Veterans Administration medical service as a "prosthetic appliance," apparently at the request of one of his physicians. Thus, assuming the V.A.'s provision of the cane as a prosthetic appliance constitutes a "prescription," the ALJ's assertion [that the plaintiff had no prescription for a cane] appears factually inaccurate. . . . In light of the fact that the cane was provided by the V.A. as a "prosthetic appliance," and considering that the Commissioner has the burden to establish at step five that there are jobs [the claimant] can fulfill in the national economy, the ALJ should develop the record with evidence concerning medical necessity, if any, for use of the cane, and its effect on [the claimant's] RFC.

*Id.* at 780-81 (internal footnote omitted).  The Tenth Circuit further commented: "While an ALJ obviously doesn't have to include canes found on the street, crutches fished out of dumpsters, or eye patches picked up in costume shops in his analysis, this cane was made available by one of [the claimant's] medical providers, apparently at his physician's request, suggesting medical necessity."  *Id.* at 781 n.3 (internal citation and quotation marks omitted).

Defendant argues that "the ALJ reasonably found that Plaintiff had not proved that a walker or scooter was medically necessary for 12 consecutive months."  *Response* [#17] at 17.  However, this is not precisely what the ALJ stated.  Rather, the ALJ stated: "Although he reported that he uses his scooter at work, he previously told his treating doctor that he only used his scooter occasionally, which suggests it is not required."  Tr. 20; *see also* Tr. 17 ("He can only stand for thirty seconds to a minute.  He can only walk a block and a half.  He has used a scooter since 2017, except that he does not use it in his house.  He used a cane and/or walker for most of 2016."); Tr. 18 ("There are periodic notes in early 2017, that the claimant was using a cane or walker."); *id.* ("He admitted he was working part-time at Walgreens and only occasionally needed his scooter or cart to get around.").

Plaintiff argues that:

> The ALJ made various references to the cane, walker, and scooter throughout her decision, but never determined whether this was medically required for him to be able to work.  The ALJ dismissed his use, stating that because he only uses it occasionally, it must mean that it was not necessary.  This is no meaningful analysis.  Even if it was substantial regarding the scooter, it does not account for Plaintiff's cane or walker use.

*Brief* [#16] at 18 (internal citations omitted).  Plaintiff further provides a long list of citations to his medical record where assistive devices are mentioned.  *Id.*

-16-

The Court finds that the ALJ erred by not explicitly making findings regarding Plaintiff's need for an assistive device. Although Defendant points to various records which may support a finding that such devices were not necessary, *see Response* [#17] at 17-18, it is for the ALJ to determine in the first instance how to weigh the potentially conflicting evidence on this issue and whether Plaintiff's use of assistive devices should impact the RFC. The scintilla of evidence pointed to by the ALJ, i.e., that Plaintiff once told his treating physician that he only occasionally used his scooter, is not enough to encompass a full analysis of this issue, either as to the scooter alone or as to any other assistive device. *See Spaulding*, 379 F. App'x at 780-81.

Accordingly, the Court finds that the ALJ erred to the extent she failed to explain her reasoning as to Plaintiff's use of assistive devices.

**B.    Steps Four and Five: Mental Limitations**

Plaintiff argues that the "ALJ erred by failing to include mental limitations in the RFC to account for her [psychiatric review technique ("PRT")] analysis." *Brief* [#16] at 19-21. Plaintiff also argues that the ALJ should have included limitations found by Dr. Bradley, who opined that Plaintiff's "ability to deal with the normal pressures in a competitive work setting is mildly impaired." *Id.* at 20; Tr. 444.

As is relevant here, the ALJ found that Plaintiff suffered from two severe impairments at step two of her analysis: depression and anxiety. Tr. 14. She then determined at step three that Plaintiff has mild limitation in understanding, remembering, or applying information; mild limitation in concentrating, persisting, or maintaining pace; mild limitation in adapting or managing oneself; and moderate limitation in interacting with others. Tr. 15-16. Plaintiff concedes that the RFC formulated by the ALJ accounts for the

moderate limitation in interacting with others. *Brief* [#16] at 20; Tr. 16 ("He is limited to occasional work interactions with the public."). Plaintiff argues, however, that the ALJ erred by failing to account in the RFC for the mild limitations. *Brief* [#16] at 20. "Mild limitation" at the step three evaluation means that "functioning in this area independently, appropriately, effectively and on a sustained basis is slightly limited." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2).

"The social security ruling on assessing a claimant's RFC cautions that '[t]he adjudicator must remember that the limitations identified [at step three] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (quoting SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996)). Thus, an "ALJ's finding of a . . . limitation . . . at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil*, 805 F.3d at 1203. For example, in *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016), the claimant had questioned "how the [ALJ's] assessment incorporate[d] the numerous moderate limitations indicated" by a clinical psychologist. The Tenth Circuit stated: "This is the wrong question. . . . [The psychologist's] notations of moderate limitations served only as an aid to [the ALJ's] assessment of [RFC]. We compare the [ALJ's] findings to [the psychologist's] opinion on [RFC], not her notations of moderate limitations."

Here, the ALJ limited Plaintiff to unskilled work. Tr. 22. To perform unskilled work, a claimant "must show the ability" to: (a) "remember work-like procedures (locations are not critical);" (b) "understand and remember very short and simple instructions;" (c) "carry out very short and simple instructions;" (d) "maintain attention for extended periods of 2-hour

segments (concentration is not critical);" (e) "maintain regular attendance and be punctual within customary tolerances. (These tolerances are usually strict.) Maintaining a schedule is not critical;" (f) "sustain an ordinary routine without special supervision;" (g) "work in coordination with or proximity to others without being (unduly) distracted by them;" (h) "make simple work-related decisions;" (i) "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (These requirements are usually strict.);" (j) "ask simple questions or request assistance;" (k) "accept instructions and respond appropriately to criticism from supervisors;" (l) "get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes;" (m) "respond appropriately to changes in a (routine) work setting;" and (n) "be aware of normal hazards and take appropriate precautions."  Program Operations Manual System ("POMS") § DI 25020.010 § B(3).

In support of his argument, Plaintiff cites to Social Security Ruling 85-15, 1985 WL 5857, at *4 (Jan. 1, 1985), which provides: "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *See Brief* [#16] at 20.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base."  SSR 85-15, 1985 WL 5857, at *4.

The Court first notes that Plaintiff has provided no authority demonstrating that the "substantial loss of ability" contemplated by SSR 85-15 can be equated with the "mild

limitations" found by the ALJ at step three in the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; or adapting or managing oneself. Tr. 15-16. In other words, the Court can find no authority supporting Plaintiff's argument that his mild limitations would result in a substantial loss of ability to meet the basic work-related activities listed in SSR 85-15. Similarly, the Court can find no authority supporting an inference that Plaintiff's mild limitations, including Dr. Bradley's opinion that Plaintiff's "ability to deal with the normal pressures in a competitive work setting is mildly impaired," Tr. 444, would prevent him from meeting the requirements of unskilled work listed in POMS § DI 25020.010 § B(3).

The Tenth Circuit has stated that it is an acceptable approach for an ALJ to account for mental limitations "by limiting the claimant to particular kinds of work activity." *Smith*, 821 F.3d at 1269 (citing *Vigil*, 805 F.3d at 1204 (holding that the ALJ adequately accounted for the claimant's "concentration, persistence, and pace problems" in the RFC by limited the claimant to unskilled work). Here, it appears that the ALJ did just that by limiting Plaintiff to unskilled work in order to account for Plaintiff's mild mental impairments. Thus, Plaintiff has not shown that the ALJ committed reversible error on this issue.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and this matter is **REMANDED** for proceedings consistent with this opinion.[4]

---

[4] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). *See Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

Dated: September 25, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

be found disabled. *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).